## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | |
|---|---|
| In re: | CASE NO. 25-20705-JRS |
| BMX TRANSPORT, LLC, | CHAPTER 11 |
| Debtor. | |

### NOTICE OF HEARING ON DEBTOR'S
### MOTION TO SELL REAL PROPERTY

The above-captioned Debtor and Debtor-in-possession filed Motion to Sell Real Property on August 12, 2025**.**

**If you object to the relief requested in this pleading, you must timely file your objection with the Bankruptcy Clerk** at United States Bankruptcy Court, 121 Spring Street SE, Gainesville, GA 30501 and serve a copy on the movant's attorney, Keck Legal, LLC Attn: Benjamin R. Keck, 2801 Buford Hwy NE, Suite 115 Atlanta, Georgia 30329, and any other appropriate persons by the objection deadline. The response or objection must explain your position and be actually received by the Bankruptcy Clerk within the required time.

A hearing on the pleading has been scheduled for **September 11, 2025,** at **10:30 a.m. in Courtroom 103, U.S. Courthouse, 121 Spring Street SE Gainesville, GA 30501,** which may be attended in person or via the Court's Virtual Hearing Room. You may join the Virtual Hearing Room through the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the homepage of the Court's website, www.ganb.uscourts.gov, or the link on the judge's webpage, which can also be found on the Court's website. Please also review the "Hearing Information" tab on the judge's webpage for further information about the hearing. You should be prepared to appear at the hearing via video, but you may leave your camera in the off position until the Court instructs otherwise. Unrepresented persons who do not have video capability may use the telephone dial-in information on the judge's webpage.

If an objection or response is timely filed and served, the hearing will proceed as scheduled. **If you do not file a response or objection within the time permitted, the Court may grant the relief requested without further notice or hearing** provided that an order approving the relief requested is entered at least one business day prior to the scheduled hearing. If no objection is timely filed, but no order is entered granting the relief requested at least one business day prior to the hearing, the hearing will be held at the time and place as scheduled.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.**

Dated: August 12, 2025

**KECK LEGAL, LLC**

*/s/ Jonathan Clements*
Benjamin R. Keck, Ga. Bar No. 943504
Jonathan Clements, Ga. Bar No. 130051
2801 Buford Highway NE, Suite 115
Atlanta, GA 30329
Tel. (470) 826-6020
bkeck@kecklegal.com
jclements@kecklegal.com
*Counsel for the*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| In re: | **CASE NO. 25-20705-JRS** |
| **BMX TRANSPORT, LLC,** | **CHAPTER 11** |
| Debtor. | |

## MOTION TO SELL REAL PROPERTY PURSUANT TO 11 U.S.C. §§ 363(b) AND (f)

BMX Transport, LLC (the "**Debtor**") hereby brings this Motion to Sell Real Property Pursuant to 11 U.S.C. §§ 363(b) and (f) (the "**Motion**"), and respectfully shows the Court as follows:

## BACKGROUND

1.      The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b), and the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Debtor filed its petition constituting an Order for Relief under Chapter 11, Title 11 of the United States Code on May 20, 2025 (the "**Petition Date**"). Debtor continues to operate its business as Debtor-In-Possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3.      This Motion arises under sections 105, 363, and 365 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

4.      The Debtor is a transportation business, specializing in freight and specialty transportation services. With a comprehensive network and extensive industry experience, the

business offers tailored solutions, including truckload services using vans and reefers, warehousing supported by advanced inventory systems, and secure 24-hour facilities. BMX excels in handling complex logistics, ensuring efficiency and transparency in meeting client shipping goals across the nation.

5.      Despite the Debtor's best efforts, rising fuel costs and increased competition across the country led to mounting monthly debt consuming its resources and depleting its cash reserves. Faced with these insurmountable challenges, the Debtor filed the instant Chapter 11 case to restructure and stabilize its operations.

## PROPOSED SALE

6.      The Debtor owns 22.5 acres of real property (the "**Property**") located at 100 Point Drive, Pendergrass, Georgia, as described in the Purchase and Sale Agreement (the "**PSA**") attached to this Motion as Exhibit "A".

7.      Debtor proposes to sell the Property to the Jackson County Board of Education (the "Jackson BOE") for the sum of $2,500,000.00, as described in the PSA.

## BASIS FOR RELIEF REQUESTED

8.      The Debtor's decision to sell the Property constitutes a sound exercise of the Debtor's business judgment. Section 363(b)(1) provides, in relevant part, that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Courts have uniformly held that approval of a proposed use of property pursuant to section 363(b) of the Bankruptcy Code is appropriate if a court finds that the transaction represents a reasonable business judgment on the part of the debtor. *See e.g., Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *In re Channel One Comm., Inc.*, 117 B.R. 493,496 (Bankr. E.D. Mo. 1990); *In re Apex Oil Co.*, 92 B.R. 847, 867 (Bankr. E.D. Mo. 1988).

9.       A Debtor's showing of sound business judgment need not be unduly exhaustive, rather a debtor is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). The business judgment rule shields a Debtors' management from judicial second-guessing. *In re Johns-Manville Corp.*, 60 B.R. 612, 61516 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a Debtors' management decisions.").

10.      Once the debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company.'" *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

11.      The Sale will result in significant benefits to the estate.  It will provide a substantial influx of cash and enable significant payments to creditors, and it will likely allow for the continued employment of some employees of the Debtor and preservation of relationships with customers and vendors.

12.      The Debtor has marketed the Property for an extensive period of time, seeking higher offers and believes that the offer of the Jackson BOE represents the highest and best possible offer for the sale of the Property and will create the most value for the estate.

13.      The Jackson BOE has demonstrated the financial ability to close this sale and is well positioned to close the transaction. Accordingly, circumstances compel the conclusion that this sale is in the best interest of creditors and the estate.

14.      To the extent the Property is encumbered by liens, the aggregate value of all such liens are less than the proposed sale price, are in bona fide dispute, or the lienholders will consent to the sale.

**WHEREFORE**, Debtor requests that this Court:

A.  Grant this Motion; and

B.  Grant such other and further relief as this Court deems just and reasonable.

Respectfully submitted, this 12th day of August, 2025.

KECK LEGAL, LLC

*/s/ Benjamin R. Keck*
Benjamin R. Keck, Ga. Bar No. 943504
Jonathan Clements, Ga. Bar No. 130051
2801 Buford Highway NE, Suite 115
Atlanta, GA 30329
Tel. (470) 826-6020
bkeck@kecklegal.com
jclements@kecklegal.com
*Counsel for the Debtor*



# ATLANTA COMMERCIAL BOARD OF REALTORS®, INC.
## Land Sales Agreement



THIS LAND SALES AGREEMENT (hereinafter referred to as the "Agreement") is made and entered into as of the Acceptance Date (as defined herein) by and between <u>BMX Transport LLC</u> ("Seller") and <u>Jackson County Board of Education</u> ("Purchaser").

## W I T N E S S E T H :

WHEREAS, Seller desires to sell to Purchaser and Purchaser desires to purchase from Seller certain real property in accordance with the terms and conditions hereinafter provided.

NOW, THEREFORE, for and in consideration of the sum of Ten and No/100 Dollars ($10.00), in hand paid, the premises and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, Seller and Purchaser do hereby covenant and agree as follows:

1. **PURCHASE AND SALE.** As a result of the efforts of <u>Norton Commercial</u> ("Broker"), a licensed real estate broker, and <u>Realco</u> ("Co- Broker"), a licensed real estate broker, Seller agrees to sell and convey to Purchaser, and Purchaser agrees to buy from Seller, all that tract of land:

   <u>Jackson County Tax Parcel 101-012 measuring approximately 22.25 acres</u>

   as more particularly described in <u>Exhibit "A"</u> attached hereto and by this reference made a part hereof, together with all improvements now located thereon, including all electrical, mechanical, plumbing and other systems and all fixtures located therein, as well as plants, trees and shrubbery thereon (collectively, the "Property").

2. **PURCHASE PRICE AND METHOD AND PAYMENT.**

   ☐ **(A)** The purchase price ("Purchase Price") of the Property shall be <u>Two Million & Two Hundred and Fifty Thousand Dollars</u> U.S. Dollars $ <u>$2,500,000</u> to be paid as follows: <u>All Cash at Closing</u>

   OR

   ☐ **(B)** The purchase price ("Purchase Price") of the Property shall be U.S. Dollars $ _____ per acre multiplied by the number of acres (calculated to the nearest 1/100 of an acre) contained within the Property, excluding such portions of the Property within any public road rights of way, as shown on the Survey (as hereinafter defined). The Purchase Price shall be paid as follows: ___.

3. **EARNEST MONEY.** Purchaser ☒ shall deliver within <u>10 Business Days</u> days of the Acceptance Date ☐ has delivered to <u>Norton Commercial</u> ("Escrow Agent", whose contact information is set forth in Section 15 below, $ <u>20,000</u> U.S. Dollars ($  ) ☐ immediately available funds ☒ check, as "Earnest Money" which, except as otherwise set forth herein, Earnest Money shall be applied as partial payment of the cash portion of the purchase price of the Property at the time the sale is consummated. If Broker or Co-Broker is acting as the Escrow Agent then the receipt of the Earnest Money is hereby acknowledged by Escrow Agent. If a party other than Broker or Co-Broker is acting as Escrow Agent such party shall be engaged pursuant to separate agreement. In the event Purchaser deposits funds to Escrow Agent in the form of a check and if Purchaser's check for the Earnest Money is returned by Purchaser's bank for any reason, Seller shall have the option to either (i) declare this Agreement null and void by written notice to Purchaser and Escrow Agent, or (ii) require Purchaser to deposit the Earnest Money in the form of immediately available funds. Purchaser and Seller understand and agree that Escrow Agent shall deposit Earnest Money within <u>10 Business Days</u> days following the Acceptance Date. The parties to this Agreement agree that Escrow Agent shall deposit the Earnest Money in Escrow Agent's Escrow Trust Account and any interest earned on said deposit shall be retained by ☐ Escrow Agent or ☒ Escrow Agent's non-interest bearing Escrow Trust Account. Purchaser's Social Security or Federal Employer ID# is <u>N/A</u>.

     Copyright © 2025 Atlanta Commercial Board of REALTORS®, Inc.

The parties to this Agreement understand and agree that the disbursement of the Earnest Money held by the Escrow Agent as escrow agent can occur only (A) at Closing; (B) upon written agreement signed by all parties having an interest in the funds; (C) upon court order; (D) upon the failure of any contingency or failure of either party to fulfill its obligations as set forth in this Agreement at the request of either party; or (E) as otherwise set out herein. In the event of a dispute between Purchaser and Seller regarding this Agreement and/or distribution of the Earnest Money, sufficient in the discretion of Escrow Agent to justify its doing so, Escrow Agent shall be entitled to interplead all or any disputed part of the Earnest Money into court, and thereupon be discharged from all further duties and liabilities hereunder. The filing of any such interpleader action shall not deprive Escrow Agent of any of its rights under this Agreement. Purchaser and Seller agree that Escrow Agent shall be entitled to be compensated by the party who does not prevail in the interpleader action for its actual costs and expenses, including reasonable attorney's fees, in filing said interpleader action. In such disputed cases, if Escrow Agent decides not to interplead, Escrow Agent may make a disbursal of the Earnest Money upon a reasonable interpretation of this Agreement. If Escrow Agent decides to make a disbursal to which all parties to this Agreement do not expressly agree, Escrow Agent shall give all parties fifteen (15) days' notice in writing of Escrow Agent's intent to disburse. Such notice shall be delivered by certified mail to the parties' last known addresses and must recite to whom and when the disbursal will be made. After disbursement, Escrow Agent shall notify all parties by certified mail of such disbursement. Any such disbursal made by Escrow Agent upon advice of counsel shall conclusively be deemed to have been made upon a reasonable interpretation. The parties hereto further agree that the Escrow Agent is acting solely as a stakeholder at their request and for their convenience, that the Escrow Agent shall not be deemed to be the agent of either of the parties in Escrow Agent's capacity as escrow agent hereunder, and that the Escrow Agent shall not be liable to either of the parties for any action or omission on its part taken or made in good faith, but shall be liable for its acts of bad faith, in breach of this agreement or gross negligence or willful misconduct. Seller and Purchaser shall jointly and severally indemnify and hold the Escrow Agent harmless from and against all costs, claims and expenses, including without limitation reasonable attorneys' fees, incurred in connection with the performance of the Escrow Agent's duties hereunder, except with respect to actions or omissions taken or made by the Escrow Agent in bad faith, in breach of this Agreement or involving gross negligence or willful misconduct on the part of the Escrow Agent.

4.  **TITLE AND SURVEY.** Seller agrees to convey good and marketable, fee simple title to the Property to Purchaser by Limited Warranty Deed. Good and marketable, fee simple title is hereby defined as title which is insurable by a national title insurance company (the "Title Company") at its standard rates on an ALTA Owner Policy (the "Title Policy"), without exception other than the following "Permitted Title Exceptions": (A) zoning ordinances affecting the Property; (B) general utility, sewer and drainage easements of record upon which any buildings on the Property do not encroach; (C) subdivision restrictions of record; (D) current city, state and county ad valorem property and sanitary taxes not yet due and payable; and (E) leases and other easements, restrictions and encumbrances specified in this Agreement or on Exhibit "B" attached hereto and incorporated herein by this reference (the "Permitted Title Exceptions"). Purchaser shall have One Hundred & Twenty Days (120) days after the Effective Date to examine the title to the Property and notify Seller of any objections to matters affecting title to the Property, including the Permitted Title Exceptions (the "Initial Title Examination"). Seller shall have up to Ten (10) calendar days after receipt of Purchaser's written notice of objections (the "Seller's Response Period") in which to correct such defects, or to provide to Purchaser a written notice that Seller shall cause such objections to be corrected or cured on or before the date of Closing. If, prior to the expiration of the Seller's Response Period, Seller shall fail either to cure or correct such title defects, or provide to Purchaser such written notice obligating Seller to do so on or before the date of Closing, then Purchaser shall have the choice of (1) accepting the Property subject to such defects and proceeding to Closing, or (2) declining to accept the Property with such legal defects. Purchaser shall exercise such choice by written notice to Seller delivered within Ten (10) calendar days following the end of the Seller's Response Period (the "Purchaser's Election Period"). If Purchaser shall decline to so accept the Property subject to such legal defects, then this Agreement shall be null and void and the Earnest Money deposit shall be promptly refunded to Purchaser. In the event that Purchaser fails to make such election within the Purchaser's Election Period it shall be conclusively deemed to have elected to accept the Property subject to such defects and proceed to Closing.

Within One Hundred and Twenty (120) days after the date that this Agreement has been fully executed by Seller and Purchaser, Purchaser may obtain and deliver to Seller, at Purchaser's sole cost and expense, a current boundary survey of the Property, which shall be prepared by a Georgia Registered Land Surveyor in accordance with no less than the minimum standards of the State of Georgia for surveys and land surveyors (the "Survey"). The Survey shall: (A) be certified to Purchaser, Purchaser's lender (if applicable) and Purchaser's title insurer by

the surveyor pursuant to a certificate in form and substance satisfactory to Purchaser; (B) correctly show the boundaries of the Property and the location of all buildings, structures, fences and other improvements situated on the Property, the location of and identify all visible easements and rights-of-way across, serving or abutting the Property, and all recorded easements to the extent they affect specific portions of the Property (including any and all off-site easements affecting or benefiting the Property) and (C) contain a calculation of the exact acreage of the Property (calculated to the nearest 1/100th of an acre), exclusive of any streets, roads and rights-of-way. If necessary, Seller agrees to execute a Quit Claim Deed with the legal description contained in the Survey in favor of the Purchaser. Purchaser's notice of title objections pursuant to the preceding paragraph shall include any objections revealed by the Survey.

From and after the date of the Initial Title Examination, Purchaser may from time to time during the term of this Agreement make further examinations of the title to the Property and update the Survey, and Purchaser may object to any matters of title first appearing of record after the effective date of such Initial Title Examination by giving Seller written notice of any such defects or objections (the "Subsequent Objections"). Seller shall thereafter have until the date of Closing (or such longer period as Purchaser, in its reasonable discretion, consents to in writing) in which to cure or satisfy any such Subsequent Objections. If Seller fails to satisfy any Subsequent Objections prior to the date of Closing (or such longer period as Purchaser, in its reasonable discretion, consents to in writing), then, at the option of Purchaser, Purchaser may: (A) terminate this Agreement, in which event the Earnest Money shall be refunded to Purchaser, all rights and obligations of the parties under this Agreement shall expire, and this Agreement shall terminate and be of no further force and effect, except for the survival of certain provisions as expressly provided in this Agreement; (B) satisfy the Subsequent Objections and proceed to Closing, after deducting from the Purchase Price the cost of satisfying those Subsequent Objections that can be satisfied by the payment of money; (C) waive such satisfaction and performance by Seller and elect to proceed to Closing.

5.    **LEASES/SERVICE CONTRACTS.** [Check the boxes in front of the applicable provision.]

☒    Seller represents to Purchaser that there are no management, service or other contracts that affect the Property that cannot be terminated at Closing by Purchaser at its sole discretion.

☐    Seller represents to Purchaser that there are no management, service or other contracts that affect the Property that cannot be terminated at Closing by Purchaser at its sole discretion, except as set forth on Exhibit "C" attached hereto and by this reference made a part hereof. Purchaser agrees to assume in writing all obligations of Seller arising from and after the date of Closing to the other parties under the contracts listed on Exhibit "C".

☐    Seller represents to Purchaser that there are no leases that affect the Property that will be in effect at closing except as set forth on Exhibit "D" attached hereto and by this reference made a part hereof. Purchaser agrees to assume in writing all obligations of Seller arising from and after the date of Closing to tenants under the leases listed on Exhibit "D" and all obligations of Seller arising from and after the date of Closing to pay any broker or brokers who negotiated such leases such commissions as are specified in such leases (or in separate commission agreements) in the same manner as if the Property had not been sold, including commissions which were negotiated and agreed to before Closing but accrue and become due after Closing. Seller shall, promptly after Closing, provide a copy of such written assumption agreement to all leasing brokers of record. At Closing Seller shall in writing assign to Purchaser all Seller's interest in such leases with appropriate warranties as to the good standing of such leases, and provide Purchaser with the originals of such leases. Seller represents that the leases are in full force and effect on the date hereof and are fully assignable to Purchaser, that no default exists under the leases on behalf of either the landlord or tenant named therein; that the leases are the only agreements between Seller as "landlord" and tenants, there having been no modification of the leases, or otherwise; and that tenants are entitled hereafter to no concessions, rebates, and/or allowances or free rent for any period after the closing. In addition, Seller shall deliver to Purchaser on or before Closing, tenant estoppel certificates in the form required under such leases, or if no form is specified or required, in form and substance reasonably satisfactory to Purchaser. Rents and utilities, including all sanitary taxes and charges applicable to the Property shall be prorated as of the date of the Closing Date.

6.    CONDITIONS OF PURCHASE. The parties hereto agree that Purchaser's obligation to purchase the Property shall be subject to the satisfaction of the following terms and conditions any one or some of which may be waived in part:

Check those applicable:

☒   Inspections: Purchaser, its agents, or representatives, at Purchaser's expense and at all times before the Closing, shall have the right to enter upon the Property for purposes including, but not limited to, inspecting, examining, boring, digging test holes, testing, surveying the Property and satisfying itself with respect to environmental matters and the availability of utilities to serve the Property. Purchaser assumes all responsibility for the acts of Purchaser, its agents and representatives as provided by this paragraph, and Purchaser hereby agrees to indemnify, defend and hold Seller and Brokers (as defined hereafter) harmless from and against all loss, cost, damage, expense and claims suffered or incurred by Seller and Brokers as a result of the exercise of such right by Purchaser and its agents, employees and contractors. In the event Purchaser does any boring, digging of test holes or testing of the Property, Purchaser shall restore the Property to its condition prior to said boring, digging of test holes or testing. It is understood by Seller that said boring, digging of test holes or other tests may necessitate the need for Purchaser to cut trees and bushes located on the Property and to alter vegetation to determine soil and rock conditions. Purchaser shall restore the Property to its previous condition after said borings, digging of test holes or other tests except that Purchaser shall not be required to restore trees, bushes and other vegetation that have been altered in order to do said borings, diggings or other tests. Purchaser shall use reasonable care to insure that a minimum amount of trees and bushes are cut and vegetation is altered and Purchaser shall remove all trash and debris created by its inspection of the Property. The provisions of this paragraph shall survive the rescission, cancellation, termination or consummation of this Agreement.

Purchaser shall have a <u>One Hundred and Fifty</u> (<u>150</u>) day period ("Inspection Period") after the Acceptance Date to decide in its sole and absolute discretion that the Property is satisfactory for Purchaser's acquisition. If Purchaser determines that the Property is not satisfactory, then Purchaser may terminate this Agreement by giving written notice to Seller and Broker prior to the end of the Inspection Period, and upon receipt of such notice, Broker shall refund the Earnest Money to Purchaser, less One Hundred ($100.00) Dollars thereof which shall be paid by Purchaser to Seller as consideration for the termination right herein granted to Purchaser.

☐   Application for New Financing: This Agreement is made contingent on Purchaser obtaining new financing, and Purchaser's obligation to close is conditioned upon Purchaser accepting a written commitment for financing. Purchaser will not reject those terms of a commitment which provide for a loan amount of at least ____ percent (____%) of the Purchase Price, interest not to exceed ____ percent (____%) per annum, a payment schedule calling for monthly payments amortized over not less than ____ (____) years. Purchaser shall make prompt application for said commitment, pay required costs and make a good faith effort to procure such financing. This Agreement shall terminate and Purchaser shall receive a refund of the Earnest Money unless Purchaser gives Seller written notice that this condition is satisfied or waived on or before ____ (____) days following the date this Agreement has been fully executed by Seller and Purchaser.

☐   Assumption of Existing Financing: If payment of the Purchase Price includes Purchaser's assumption of a note and mortgage, Seller shall promptly deliver to Purchaser true, correct and complete copies of the underlying debt, loan and security instrument(s) to be assumed, and Purchaser shall be deemed to have approved all of the terms of such instrument(s) unless Purchaser gives notice of disapproval within ten (10) days after receiving such instrument(s), in which case this Agreement shall become null and void and Purchaser shall receive a refund of its Earnest Money. If any of the debt instrument(s) requires the consent of a third party to the assumption by Purchaser, then Seller and/or Purchaser (as required under such instrument(s)) shall apply for such consent within seven (7) days after Purchaser's receipt of such instrument(s). Upon Purchaser's request, Seller shall assist Purchaser in requesting and/or procuring the third party's consent to the assumption on the Purchaser's behalf. This Agreement shall terminate and Purchaser shall receive a refund of the Earnest Money, unless Purchaser provides Seller written notice within ____ (____) days of receiving the debt instrument(s) stating that such consent is available on terms and conditions reasonably acceptable to Purchaser or that Purchaser is waiving this assumption contingency. Purchaser shall pay any assumption fees or other out-of-pocket expenses attributable to the assumption of the underlying indebtedness.

7.   **AVAILABILITY OF UTILITIES.** Notwithstanding anything to the contrary, if after the end of the Inspection Period and prior to the Closing any utility company or governmental entity takes any action (including, without

limitation, imposing a sewer moratorium) that results in the non-availability to the Property at the Closing of any utility necessary for the development thereof (including, without limitation, necessary or appropriate pressures and capacities), then Purchaser may terminate this Agreement by giving written notice thereof to Seller and Broker prior to the Closing, whereupon Broker shall refund the Earnest Money to Purchaser.

8.  **AGENCY DISCLOSURE.** Pursuant to Regulation 520-1.06 of the Georgia Real Estate Commission's Regulations and Georgia's Brokerage Relationships in the Real Estate Transactions Act ("BRRETA"), O.C.G.A. Section 10-6A-1 et. seq., Seller and Purchaser hereby acknowledge that Broker and Co-Broker, if any, make the following disclosures, checking all that apply:

As to Broker:

☒ **(A)** Broker represents the <u>Purchaser</u> only; or

☐ **(B)** Broker represents both the Seller and Purchaser jointly and such dual agency is expressly consented to by the parties by their execution of a Dual Agency Disclosure and Consent Agreement.

☐ **(C)** Broker has assigned Broker's affiliated license # ____ to represent solely the Seller as its designated agent and has assigned Broker's affiliated licensee # ____ to represent solely the Purchaser as its designated agent; or

☐ **(D)** Broker represents neither the Seller nor the Purchaser, but rather is acting as a transactional broker pursuant to BRRETA.

As to Co-Broker:

☒ **(A)** Co-Broker represents the <u>Seller</u> only; or

☐ **(B)** Co-Broker represents both the Seller and Purchaser jointly and such dual agency is expressly consented to by the parties by their execution of a Dual Agency Disclosure and Consent Agreement. Co-Broker has assigned Broker's affiliated license # ____ to represent solely the Seller as its designated agent and has assigned Broker's affiliated licensee # ____ to represent solely the Tenant Purchaser as its designated agent; or

☐ **(C)** Co- Broker represents neither the Seller nor the Purchaser, but rather is acting as a transactional broker pursuant to BRRETA.

Neither Broker nor Co-Broker shall over any duty to Seller or Purchaser greater than what is set forth in BRRETA, Official Code of Georgia Annotated Section 10-6A-1 et. seq.

9.  **REAL ESTATE COMMISSION.** In negotiating this Agreement, Broker and Co-Broker (collectively "Brokers") have rendered a valuable service for which Brokers shall be paid a commission at Closing.

**See Special Stips**

☐      pursuant to the terms of separate written agreements with Brokers.

☐      by ☐ Seller ☐ Purchaser equal to ____ percent (____%) of the Purchase Price (the "Commission"). Such Commission shall be payable at Closing as follows:

_____
_____
_____

No change shall be made by Purchaser or Seller with respect to the time of payment, amount of payment, or the conditions of payment of the Commission, without the written consent of Brokers. If this transaction involves an exchange of real estate, the full Commission shall be paid in respect to the property conveyed

to each party to the other, and notice of the dual agency is hereby given and accepted by Seller and Purchaser. The Commission on an exchange shall be calculated on the amount of the stated basis of each property as taken in such exchange, according to the agreement between the parties, and if no value is placed on the property to be exchanged, then according to the reasonable value thereof. In the event of any exchange, each party shall be regarded as the seller as to the property conveyed by each party. Purchaser and Seller each hereby represent and warrant to the other, and to Brokers, that no party other than Brokers is entitled as a result of the actions of Seller or Purchaser, as the case may be, to a commission or other fee resulting from the execution of this Agreement or the transactions contemplated hereby, and Seller and Purchaser each hereby agree to severally indemnify, defend and hold each other and Brokers harmless from and against any and all costs, damages and expenses, including attorneys fees arising from claims made by broker or agents for additional real estate commissions or brokerage fees with whom the indemnifying party may have dealt. This representation, warranty and indemnity shall survive the rescission, cancellation, termination or consummation of this Agreement.

10.    **DISCLAIMER.** Seller and Purchaser acknowledge that they have not relied upon the advice or representations, if any, of Brokers, or their associate brokers or salespersons, concerning: (A) the legal and tax consequences of this Agreement in the sale of the Property; (B) the terms and conditions of financing of the Property; (C) the purchase and ownership of the Property; (D) the structural condition of the Property; (E) the operating condition of any business; (F) the operating condition of the electrical, heating, air conditioning, plumbing, water heating systems and appliances on the Property; (G) the availability of utilities to the Property; (H) the investment potential or resale value of the Property; (I) the financial ability of Purchaser; or, (J) any conditions existing on the Property which may affect the Property; or (K) any matter which could have been revealed through a survey, title search or inspection of the Property; (L) environmental matters relative to the Property. Seller and Purchaser both acknowledge that if such matters have been a concern to them, they have sought and obtained independent advice relative thereto.

11.    **DAMAGE AND CONDEMNATION.**

(A)    DAMAGE TO PROPERTY. Seller warrants that at Closing the Property will be in substantially the same condition as it is on the Acceptance Date, normal wear and tear excepted, and that Seller neither will do nor will permit to be done anything which will materially affect the use of the Property, except as otherwise provided in this Agreement. However, should the Property be destroyed or substantially damaged before the Closing, then Seller shall promptly notify Purchaser in writing of such event. Within ten (10) days after Seller provides Purchaser written notice of the amount of the insurance proceeds, if any, which Seller will receive on the claim of loss: (i) terminate this Agreement; or (ii) consummate this Agreement, in which event Purchaser shall have the right to receive such insurance proceeds which have been paid to Seller, or, if not yet paid, to receive an assignment of such insurance proceeds. In the event Purchaser fails to make an election within said 10-day period, Purchaser shall be deemed to have elected option (ii) above. If Purchaser has not been notified by Seller of the amount of the insurance proceeds, if any, which Seller will receive on the claim of loss within forty-five (45) days subsequent to the occurrence of such damage or destruction, or by the date of Closing, whichever occurs first, Purchaser may at its option cancel this Agreement by written notice to Seller. If Purchaser fails to provide such notice to Seller, Purchaser shall be conclusively deemed to have elected to consummate this Agreement and receive an assignment of Seller's interest in such insurance proceeds as are paid or payable on the claim of loss.

(B)    **CONDEMNATION.** Upon the institution of condemnation proceeding (or voluntary conveyance in lieu thereof) against any portion of the Property, Seller shall promptly notify Purchaser of such proceeding (or voluntary conveyance in lieu thereof). If such condemnation (or voluntary conveyance in lieu thereof) of all or any portion of the Property that is material, as determined by Purchaser in its reasonable discretion, then, within ten (10) days after Seller provides Purchaser written notice of the amount of the amount of such condemnation award, if any, which Seller will receive from such condemnation, Purchaser shall elect to: (i) terminate this Agreement; or (ii) consummate this Agreement, in which event Purchaser shall have the right to receive such condemnation awards (if any) which have been paid to Seller, or, if not yet paid, to receive an assignment of such condemnation awards. In the event Purchaser fails to make an election within said 10-day period, Purchaser shall be deemed to have elected option (ii) above. If Purchaser has not been notified by Seller of the amount of the condemnation award, if any, which Seller will receive from such condemnation within forty-five (45) days subsequent to the occurrence of such condemnation, or by

the date of Closing, whichever occurs first, Purchaser may at its option cancel this Agreement by written notice to Seller. If Purchaser fails to provide such notice to Seller, Purchaser shall be conclusively deemed to have elected to consummate this Agreement and receive an assignment of Seller's interest in such insurance proceeds as are paid or payable on the claim of loss.

12. **ASSIGNMENT.**

 This Agreement, and the rights and obligations hereunder, may not be assigned by Purchaser without the prior written consent of Seller, which consent may not be unreasonably withheld, except to an affiliated company or a to be formed entity in which Purchaser has a majority equity interest. Notwithstanding anything contained herein to the contrary, however, any such approved assignee shall assume in writing all of the obligations and liabilities of Purchaser hereunder, and a copy of such assignment shall be provided to Seller in writing within five (5) days after it is signed by Purchaser and assignee. No such assignment shall release the original Purchaser from liability to Seller as set forth in this Agreement.

☐ Purchaser, upon written notice to Seller, may assign this Agreement to a person, partnership, limited liability company or corporation without the prior-written consent of Seller with respect to the Purchaser. No such assignment shall release the original Purchaser from liability to Seller as set forth in this Agreement.

13. **SELLER'S WARRANTIES.** Seller agrees, represents and warrants that, to Seller's knowledge and belief: (A) Seller has the full right and authority to enter into this Agreement and to consummate the sale of the Property as set forth herein; (B) Seller has not received any notice and has no knowledge that the Property is or will be affected by any special assessments, condemnation, eminent domain, change in grade of public streets or similar proceedings; (C) Seller has entered into no unperformed agreement, oral or written, not referred to herein, with reference to the Property, and neither the Seller nor the Property is subject to any judgment or decree of a court of competent jurisdiction, or to any lawsuit or administrative proceeding which would in any way adversely affect the Property or which would in any way be binding upon Purchaser or its successors or assigns, or which would limit or restrict in any way Seller's rights and ability to enter into this Agreement and consummate the transactions contemplated hereby; (D) Seller is a validly existing entity existing under the laws of the State of <u>Georgia</u> and the individual executing on behalf of the entity has authority to enter into the transaction contemplated by this Agreement, or if executed in an individual capacity, has authority to execute; (E) Seller has good and marketable fee simple title to the Property which can be conveyed to Purchaser in accordance with the terms and conditions of this Agreement. (F) Except for the representations and warranties set forth in this Agreement or in any of the documents delivered at Closing (the "Seller's Warranties"), this sale is made and will be made without additional representations, covenants, or warranties of any kind by Seller and shall be made on an "as-is", "where-is" basis, with all faults, latent or patent. Consistent with the foregoing and subject solely to the Seller's Warranties, effective as of the Closing Date, Purchaser, for itself and its agents, affiliates, successors and assigns, hereby waives, relinquishes, releases and forever discharges Seller, its agents, affiliates, subsidiaries, successors and assigns (collectively the "Releasees") from any and all rights, claims and demands at law or in equity, whether known or unknown, which Purchaser has or may have in the future, arising out of the physical, environmental, economic, legal or other condition of the Property.

14. **DEFAULT. REMEDIES.**

(A) **PURCHASER'S DEFAULT:** If the sale and purchase of the Property contemplated by this Agreement is not consummated because of Purchaser's default, then Escrow Agent shall, within three (3) business days of Seller's demand therefor, remit the Earnest Money to Seller as full and final liquidated damages for such default of Purchaser, the parties hereto acknowledging that it is impossible to more precisely estimate the damages to be suffered by Seller upon Purchaser's default, and the parties expressly acknowledging that retention of the Earnest Money is intended not as a penalty, but as full and final liquidated damages and that said sum is an agreed reasonable estimate of such damages. The Seller's right to retain the Earnest Money as full and final liquidated damages is Seller's sole and exclusive remedy in the event of default hereunder by Purchaser, and Seller hereby waives and releases any right to (and hereby covenants that it shall not) sue the Purchaser (A) for specific performance of this Agreement; or (B) to prove that Seller's actual damages exceed the Earnest Money which is hereby provided Seller as full and final liquidated damages. In the event the purchase and sale contemplated in this Agreement is not consummated because

of Purchaser's default, Purchaser hereby waives and releases any right to (and hereby covenants that it shall not) sue Seller to recover the Earnest Money or any part thereof.

**(B)**      **SELLER'S DEFAULT:** If the purchase of the Property is not consummated in accordance with the terms and conditions of this Agreement because of Seller's default, then the Earnest Money (including any interest earned thereon, if any) shall be returned to Purchaser within five (5) business days of written demand from Purchaser and Purchaser shall have the right, at its sole election: (A) to terminate this Agreement; (B) to pursue specific performance plus the cost of obtaining specific performance; or (C) if Purchaser is not reasonably able to obtain specific performance of Seller's obligations under this Agreement or if specific performance is an inadequate remedy as a result of the acts or omissions of Seller, to pursue its remedies at law and equity (provided, however, in no event shall Purchaser be entitled to monetary damages in excess of an amount equal to the Earnest Money).

**15.**    **NOTICES.** All notices, requests, consents and other communications hereunder shall be in writing and shall be personally delivered, sent by overnight (e.g. Federal Express) or same day courier service providing a return receipt, or mailed by first-class registered or certified mail, return receipt requested, with postage prepaid. Notices may also be sent by facsimile or electronic mail (with proof of transmission and receipt) between the hours of 9:00 a.m. and 6:00 p.m. local EST time, Mondays through Fridays, holidays excepted, provided that a copy thereof is also sent, within three (3) business days, by one of the other methods permitted hereunder. Notices shall be effective when received, when refused or when the same cannot be delivered, as evidenced on the return receipt or facsimile delivery confirmation, as applicable. Notices shall be sent to the following addresses:

| **PURCHASER:** | Jackson County Board of Education | **SELLER:** | BMX Transport LLC |
|---|---|---|---|
| | 1550 Winder Highway | | 2850 Hog Mountain Road Suite 201 |
| | Jefferson, GA 30549 | | Dacula, GA 30019 |
| ATTN: | Dr. Philip Brown | ATTN: | Ilya Stepanskiy |
| Email: | pbrown@jcss.us | Email: | bmxtransport@gmail.com |

| **BROKER:** | Norton Commercial | **CO-BROKER:** | Realco Brokers |
|---|---|---|---|
| | 434 Green Street | | 9910 Hightower Rd Roswell GA 30075 |
| | Gainesville GA 30501 | | |
| ATTN: | Matt McCord | ATTN: | Tatyana Crumley |
| Email: | matt@nortoncommercial.com | Email: | |

| **ESCROW AGENT:** | Norton Commercial and Acreage Group LLC |
|---|---|
| | 434 Green Street |
| | Gainesville GA 30501 |
| ATTN: | Matt McCord/Cindy Ballard |
| Email: | matt@nortoncommercial.com |

**16.**    **FOREIGN PERSON STATUS.**

**(A)**      At Closing, if Seller does not deliver to Purchaser a certificate reasonably acceptable to Purchaser setting

Docusign Envelope ID: E0A2A4F7-8B1C-4685-8FE6-D9E4B4D52048

forth Seller's address and Social Security or Tax Identification number and certifying that Seller is not a foreign person for purposes of the Foreign Investment in Real Property Tax Act, as revised by the Deficit Reduction Act of 1984, then Purchaser shall deduct and withhold a tax equal to either ten percent (10%) of the Purchase Price or such other amount as may be authorized by a withholding certificate from the Internal Revenue Service.

**(B)** At Closing, if Seller does not deliver to Purchaser an affidavit reasonably acceptable to Purchaser confirming that Seller is a resident or "deemed resident" of the State of Georgia for purposes of O.C.G.A. Section 48-7-128, then Purchaser shall be entitled to withhold a portion of the Purchase Price for payment to the Georgia Department of Revenue pursuant to said statute.

**17.** **ENVIRONMENTAL CONDITIONS.** To Seller's actual knowledge:

**(A)** The Property has never been used as a landfill for garbage or refuse, dump, stump pit, toxic waste dump or cemetery, or for the handling, generation, treatment, release, storage or disposal of chemicals or hazardous wastes or substances so as to create an environmental hazard. For purposes of this Agreement, the term "hazardous wastes or substances" shall mean petroleum including crude oil or any fraction thereof, and any substance identified in CERCLA, RCRA, or any other federal, state or other governmental legislation or ordinance identified by its terms as pertaining to the disposal of hazardous substances or waste.

**(B)** (i) The Property is free from any hazardous or toxic materials or waste or similarly described substances under any applicable federal or state laws or regulations and (ii) there have been no violations of applicable "wetlands" regulations in connection with the development of the Property.

**(C)** There are no storage tanks located on the Property, either above or below ground.

**18.** **CLOSING COSTS.** Unless otherwise stipulated in this Agreement, Purchaser agrees to pay the following costs, if any, at Closing: (i) Purchaser's attorney's fees; (ii) the cost of preparing the conveyancing documents (iii) all appraisal fees; (iv) all title examination and survey fees and the premiums for all title insurance commitments and policies; (v) all recording fees; and (vi) any other charges incurred by Purchaser relating to the transaction contemplated herein. Seller agrees to pay the following costs, if any, at Closing: (i) Seller's attorney's fees; (ii) any transfer taxes; and (iii) any other charges incurred by Seller in connection with this transaction. The Brokers' Commission shall be paid at Closing in accordance with Section 9 of this Agreement.

**19.** **CLOSING.** The sale of the Property shall be closed ("Closing") on or before No later than 90 days from the conclusion of the Inspection Period. (the "Closing Date") at a time and place acceptable to Purchaser and Seller; provided, however, if Purchaser and Seller fail to agree on a time and place, the Closing shall be held on the aforesaid date at 1:00 P.M. in the office of Broker at the address set forth above.

**20.** **GENERAL.**

**(A)** Entire Agreement. This Agreement constitutes the sole and entire Agreement between the parties hereto with respect to the subject matter hereof, and no modification of this Agreement shall be binding unless signed by all parties to this Agreement. No representation, promise, or inducement not included in this Agreement shall be binding upon any party hereto.

**(B)** Captions. The headings at the beginning of each paragraph are for clarification purposes only and are not intended to alter the context of this Agreement.

**(C)** Binding Effect. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, legal representatives, successors and assigns.

**(D)** Time of the Essence. Time is of the essence of this Agreement.

**(E)** Governing Law. This Agreement shall be interpreted in all respects in accordance with the laws of the State of Georgia.

**(F)**    <u>OFAC.</u> Neither Seller nor Purchaser, nor any of their affiliates, nor, to Seller's or Purchaser's respective knowledge, any of their respective partners, members, shareholders or other equity owners, or to Seller's or Purchaser's respective knowledge, any of their respective employees, officers directors, representatives or agents is, nor will they become, a person or entity with whom U.S. persons or entities are restricted from doing business under regulations of the Office of Foreign Asset Control ("OFAC") of the Department of the Treasury (including those named on OFAC's Specially Designated and Blocked Persons List) or under any statute, executive order (including the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action and is not and will not assign or otherwise transfer this Agreement to, contract with or otherwise engage in any dealings of transactions or be otherwise associated with such persons or entities.

**(G)**    <u>No Waiver.</u> No failure of any party to exercise any power given hereunder or to insist upon strict compliance with any obligation specified herein, and no custom or practice at variance with the terms hereof, shall constitute a waiver of either party's right to demand exact compliance with the terms hereof.

**(H)**    <u>Counterparts.</u> This Agreement may be executed in several counterparts, each of which shall constitute an executed original hereof.

**(I)**    <u>Conditions Precedent.</u> Conditions precedent to the obligation of either party to close hereunder, if any, are for the benefit of such party only, and any and all of said conditions may be waived in the discretion of the party benefited thereby.

**(J)**    <u>Responsibility to Cooperate.</u> Seller and Purchaser agree that such documentation as is reasonably necessary to carry out the terms of this Agreement shall be produced, executed and/or delivered by such parties within the time required to fulfill the terms and conditions of this Agreement.

**(K)**    <u>Survival of Agreement.</u> Any condition or stipulation not fulfilled at the time of the Closing shall survive the closing, execution and delivery of the warranty deed until such time as said conditions or stipulations are fulfilled.

**(L)**    <u>Closing Certifications.</u> Seller shall deliver to Purchaser at the Closing an affidavit: (i) certifying that Seller is not a foreign person within the meaning of Section 1445 of the Internal Revenue Code; (ii) certifying the information required for Internal Revenue Service Form 1099; and (iii) certifying as to such other matters as may be reasonably required by the title insurance company for issuance of a title insurance policy on the Property.

**(M)**    <u>Business Days.</u> If the time period by which any right, option or election provided under this Agreement must be exercised, or by which any act required hereunder must be performed, or by which the Closing must be held, expires on a Saturday, Sunday or legal holiday, then such time period shall be automatically extended to the close of business on the next regular business day

**(N)**    All tenant security deposits shall be delivered or credited by Seller to Purchaser at Closing, and Purchaser shall sign an agreement at Closing to hold Seller harmless against claims regarding such transferred security deposits.

**(O)**    Possession of the Property shall be granted by Seller to Purchaser no later than <u>Closing</u>, subject to the rights of tenants of the Property, if any are listed on Exhibit "D" hereto.

**(P)**    Any box not checked in any paragraph is specifically not applicable.

Any postponement or delay of the Closing, as may be permitted in this Agreement, shall not exceed eighteen (18) months, unless otherwise expressly agreed in writing by all of the parties hereto.

**21.    SPECIAL STIPULATIONS:**

The following Special Stipulations shall, if conflicting with the foregoing, control:

1. This purchase is contingent upon an affirmative vote by the Jackson County Board of Education prior to the conclusion of the Inspection Period.
2. Seller warrants to the best of their knowledge there are no hazardous materials or waste on the property.
3. Confirmation by Purchaser the subject property has suitable soils for the proposed use.
4. Seller will pay Broker a 1 % Commission. Seller may pay Co-Broker by Separate Agreement.
5. Approval from GA State Board of Education
6. Seller will provide copies of all surveys, engineering, test, reports, geotech, CAD files and any zoning declarations within 10 days of the effective date.

22. **ACCEPTANCE DATE.** The "Acceptance Date" of this Agreement is the date upon which the last of Purchaser or Seller executes or initials the last change in this Agreement below. The party last executing this Agreement shall promptly deliver executed counterparts of this Agreement to all parties in accordance with the notice provisions of this Agreement.

**ATLANTA COMMERCIAL BOARD OF REALTORS, INC. ("ACBR") DISCLAIMER; WAIVER AND RELEASE OF CLAIMS.** This "Disclaimer; Waiver and Release of Claims" provision, without any changes, modifications, deletions or revisions, must be included in all ACBR Form documents that include any reference to ACBR. The parties hereto hereby acknowledge and agree that: (A) THIS DOCUMENT HAS IMPORTANT CONSEQUENCES, LEGAL, FINANCIAL AND OTHERWISE, AND ACBR HAS ADVISED THE PARTIES THAT THEY SHOULD EACH CONSULT WITH AN ATTORNEY OR OTHER PROFESSIONAL OF THEIR CHOICE WITH RESPECT TO THE TERMS OF, AND/OR THE COMPLETION, MODIFICATION AND/OR EXECUTION OF, THIS DOCUMENT; (B) form documents by their nature are designed to be of general application, and may not be applicable to specific facts and circumstances, may not address a given party's specific conditions or requirements and/or may not reflect the relative bargaining or negotiations of the parties, as such variables may arise on any given transaction; (C) to avoid any possible misunderstanding or confusion as to the original form of this document and any revisions, modifications or changes to it, any and all revisions, modifications or changes to the original should be made readily apparent by highlighting, underscoring or other means to distinguish them from the original ACBR form; (D) ACBR has made the original versions of this document and other document forms available to ACBR"s members as a service, but makes no representation or warranty, express or implied, as to the suitability or applicability of the terms and conditions of, or the enforceability of, this document or other document forms; (E) ACBR document forms are updated by ACBR from time to time, and ACBR strongly recommends to the parties that they use the most current, updated versions of any such document forms; and (F) by executing this document the parties hereto each hereby waive and release ACBR, its officers, directors, members, employees and agents, from any and all claims, demands and/or causes of action (whether known or unknown) arising out of, pertaining to or resulting directly or indirectly from the use of this form document.

*Note: Prepare and attach Exhibits "A" - "D", as applicable*

☒    *Exhibit "A" Legal Description of Land (as referenced in Section 1)*

☐    *Exhibit "B" Permitted Title Exceptions (as referenced in Section 4)*

☐    *Exhibit "C" Management, Service or other Contracts (as referenced in Section 5)*

☐    *Exhibit "D" Leases (as referenced in Section 5)*

[Signatures on following page]

This instrument shall be regarded as an offer by the first party to sign it and is open for acceptance by the other party until __5__ o'clock __P__ .m. on the __29th__ day of __May__ , __2025__ , by which time written acceptance of such offer must have been actually received by Broker, who shall promptly notify the other party of such acceptance. The parties agree that this Agreement may be executed by facsimile and in counterparts, each of which shall be effective as an original, but all of which counterparts taken together shall constitute one and the same Agreement.

IN WITNESS WHEREOF, Purchaser, Seller, Broker and Co-Broker have hereunto set their hands and seals as of the date indicated below.

**PURCHASER:**

By: _Philip Brown_ (Seal)
Signed by: Philip Brown
44301885B7CE4DC...

Name: Jackson County Board of Education

Title: Dr. Philip Brown / Superintendent

Firm: _____

Phone: _____

Date: 5/23/2025

**SELLER:**

By: _Ilya Stepanskiy_ (Seal)

Name: BMX Transport LLC

Title: Ilya Stepanskiy / Registered Agent

Firm: _____

Phone: 470.447.883

Date: 05-22-2025

[Signatures continue on following page]

JOINS HEREIN FOR THE SOLE PURPOSE OF CONSENTING TO ALL PROVISIONS IN THIS AGREEMENT APPLICABLE TO ESCROW AGENT:

**ESCROW AGENT:**

By: _____Norton Commercial_____ (Seal)

Name: _____

Title: _____

Firm License #: _____H66501_____

Phone: _____770.297.4800_____

Date: _____

Agent Name(s): _____

Agent License #(s): _____


JOINS HEREIN FOR THE SOLE PURPOSE OF CONSENTING TO ALL PROVISIONS IN THIS AGREEMENT APPLICABLE TO BROKER:

**BROKER:**

By: _____Matt McCord_____ (Seal)
DocuSigned by:
B5F4ED5942E8447...

Name: _____5/23/2025_____

Title: _____

Firm: _____Norton Commercial_____

Firm License #: _____H6651_____

Phone: _____7705610500_____

Date: _____

Agent Name(s): _____McCord_____
_____272197_____

Agent License #(s): _____272197_____


JOINS HEREIN FOR THE SOLE PURPOSE OF CONSENTING TO ALL PROVISIONS IN THIS AGREEMENT APPLICABLE TO CO-BROKER:

**CO-BROKER:**

By: _____Realco_____ Brokers, Inc.    _Tatyana Crumley_ (Seal)

Name: _____Tatyana Crumley_____

Title: _____Broker_____

Firm: _____Realco Brokers, Inc._____

Firm License #: _____H-45120_____

Phone: _____678-468-7761_____

Docusign Envelope ID: E0A2A4F7-8B1C-4685-8FE6-D9E4B4D52048

Date:                        5/22/2025

Agent Name(s):               Tatyana Crumley

Agent License #(s):          316058

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing motion was filed using the Court's CM/ECF system, which generates an electronic service copy thereof to all parties registered to receive notices thereby, and the parties on the attached matrix by email.

Dated: August 12, 2025                    Respectfully Submitted,


**KECK LEGAL, LLC**

<u>/s/ Jonathan Clements</u>
Benjamin R. Keck, Ga. Bar No. 943504
Jonathan Clements, Ga. Bar No. 130051
2801 Buford Highway, Suite 115
Atlanta, GA 30329
Tel. (470) 826-6020
bkeck@kecklegal.com
jclements@kecklegal.com
***Counsel for the Debtor***